SLATTER
*v.*
TIERNAN.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## JAMES WRIGHT *v.* ROBERT ABBOTT.

| 6 | 569 |
|---|---|
| 109 | 912 |

Notice to the opposite party of the taking of the testimony of a witness about to depart from the State, served on the evening of the sixth of a month, to attend on the next morning, at ten o'clock, is sufficient to authorize the reception of the testimony.

Where a person pulls down the barricades, erected on the streets of New Orleans by a paving contractor, and thereby causes the pavement to be injured before it is ready for public use, he is responsible to the contractor for the damage he has caused.

Interest cannot be allowed on an unliquidated demand, from the date of judicial demand· It should be allowed only from the date of the judgment which liquidates the debt.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *Lockett* and *Goold*, and *C. Roselius*, for plaintiff. *Durant* and *Hornor*, for defendant. The judgment of the court was pronounced by

PRESTON, J. The plaintiff contracted with Municipality Number Two of New Orleans, to pave Richard street, in the rear of Annunciation street. He finished two squares; but the work not being yet firmly set, he barricaded the street at the ends of the squares, to prevent vehicles from injuring, by passing over, the pavement.

He complains, that while the work was in this unfinished state, the defendant, owner of a cotton press, caused his barricades to be broken down, letting vehicles and drays pass, and caused his hauling to be done over the pavement, notwithstanding his repeated notices and requests to the defendant to desist from this breaking up and destroying it. By which means, he alleges, the pavement was broken up, and that he was compelled to re-pave it, at an expense of eleven hundred dollars, in order to have his work received by the municipality. There was judgment for the plaintiff for five hundred and seventy-five dollars, with interest; and the defendant has appealed.

The testimony of the late *George T. Dunbar* was taken under a commission, issued on an affidavit filed, that he was a material witness and about to depart from the State before the trial of the cause. The defendant's counsel opposed the reading of the testimony, on the ground that sufficient notice had not been given to the defendant, to be present at the execution of the commission.

He alleges, and the notice shows, that it was served upon *Mr. McMullen*, the defendant's partner, and at his cotton press, on the 6th of December, (and defendant offered to prove, at six o'clock in the evening,) to attend the taking of the testimony, at ten o'clock, the next day. This was certainly short notice, and more should have been given; still, it afforded time to the defendant's agent, or his attorney, to have gone to the magistrate the next morning, and have asked a postponement of the examination, if necessary. It is further urged in argument, that there was no necessity for hurry in taking *Dunbar's* testimony, as he did not depart from the State for some days afterwards. This, then, afforded the defendant an opportunity to cause him to be re-summoned and cross-examined. A party should not be so readily heard as to an injury, which he could have easily repaired. Some discretion must be allowed to the courts of original jurisdiction, as to the admission of testimony. The judge might have

72

WRIGHT
*v.*
ABBOTT.

declined to receive the testimony of *Dunbar* in this case, thus forcing the plaintiff to a non-suit or continuance, in order to take it again. But *Dunbar* was dead. We are unwilling to reject the testimony which would lead to remanding the cause for a new trial, in which case it could not be obtained; but certainly would not render judgment, on testimony thus taken, unless strongly corroborated by other evidence.

But every important fact stated by *Dunbar* is proved, or necessarily inferred, from the testimony of *Kirk, Tardé* and *Barnes*, witnesses examined at the trial, for plaintiff. It is true, that the defendant furnished much contradictory testimony. But we deduce from the whole, substantially, as the district court has done: 1. That about Christmas, 1848, the plaintiff, under a contract with the municipality, had completed the pavement of Richard, between Pacaniers and St. John the Baptist streets. 2. That in consequence of the bad weather, the pavement had not become set, and had not yet been received by the surveyor of the municipality, without whose approval of the work, the plaintiff could not receive payment for the same. 3. That the pavement was broken up, in consequence of the defendant breaking down the barricades by which it was protected, and using it for hauling on his drays, and leaving it open to others to do the same. 4. That this rendered it necessary to re-pave the whole before it would be received, which was done by the plaintiff. 5. That the price of doing the work was one dollar a square yard; and it appears, by the pleadings, that there were eleven hundred square yards. 6. We have no reason to believe, that the allowance, for the re-pavement, of one half the whole price of the pavement, was unreasonable. The district judge made his calculation on eleven hundred and fifty square yards of pavement, instead of eleven hundred yards. This was a small error, which probably the defendant might have had corrected in the district court, and for which, alone, we would be unwilling to reverse the judgment. But, 7th, interest should have been allowed from the rendition of the judgment, when the damages claimed were liquidated, and not from the judicial demand. See 1st Ann. 382. 3d Ann. 703. This makes a difference of fifty dollars in the amount of the judgment rendered, and that for which it should have been rendered. And considering that there was an error of twenty-five dollars in calculating the principal, the judgment must be amended in these particulars; and in reducing it seventy-five dollars, we are inclined to think justice will still be done to the plaintiff.

It is therefore decreed, that the judgment of the district court be reversed; and that there be judgment in favor of the plaintiff, against the defendant, for five hundred and fifty dollars, with interest from this date, and costs in the district court; the plaintiff and appellee to pay the costs of the appeal.